# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 27, 2001 Session

## STATE OF TENNESSEE v. CLARENCE W. CARTER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-C-1975     Steve Dozier, Judge**

---

**No. M2000-02230-CCA-R3-CD - Filed October 21, 2002**

---

On March 29, 2000, a Davidson County jury convicted the defendant on one count of conspiracy to sell three hundred grams or more of a substance containing cocaine and one count of possession with intent to deliver twenty-six grams or more of a substance containing cocaine.[1] For the conspiracy conviction the trial court sentenced him to thirty-six years as a multiple offender, and for the possession charge the defendant received a sixteen-year sentence also as a multiple offender. In addition, the trial court fined the defendant one hundred thousand dollars on each count. The court then determined that the possession conviction should run consecutively to the conspiracy conviction resulting in an effective sentence of fifty-two years.[2] After unsuccessfully pursuing a motion for a judgment of acquittal and a new trial motion, the defendant brings this appeal raising a variety of issues. More specifically, the defendant alleges 1) that the trial court erred by not granting him a judgment of acquittal on the amended possession count; 2) that the charge of "possession of over 26 grams of cocaine fatally varied with the conviction of possession of over 26 grams of c[o]caine with intent to sell"; 3) that the conspiracy count is void for failing "to allege an overt act in pursuit of the conspiracy"; 4) that the evidence is insufficient to support both convictions; 5) that the trial court erred in failing to provide the lesser-included instruction regarding conspiracy to sell or deliver under three hundred grams of cocaine; 6) that the trial court erred in sentencing the defendant as a multiple offender; and 7) that the trial court excessively sentenced the defendant as a result of improperly ordering that the sentences arising from this case are to be served consecutively. After considering each of these, we find that none of them merit relief and, therefore, affirm the defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

---

[1] The jury acquitted the defendant of possession of an unlawful weapon and money laundering charges.

[2] The trial court further ordered that the conspiracy sentence should run consecutively to a prior sentence of the defendant's.

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

C. Edward Fowlkes, Nashville, Tennessee, for the appellant, Clarence W. Carter.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; John Zimmerman and Anna Escobar, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Months of police surveillance culminated on November 19, 1998, with various searches and the arrest of the defendant and Reginald Hutchinson, an acquaintance of the defendant's. Prior to that date Officer Aaron Thomas had conducted "trash pulls" at 113 Bess Court, where the defendant resided, and 1218 Fifteenth Avenue, South, where Hutchinson lived. On the 12th of November, Thomas recovered significant items from the Fifteenth Avenue trash. Among the items obtained were: 1) an empty box of baggies, which are often used to package cocaine for distribution; 2) an invoice bearing one of the defendant's girlfriend's names;[3] 3) documentation with the defendant's name thereon related to a BMW 635CSI; 4) around eight small baggies; and 5) a large bag having white powder residue. The officer field tested this substance and obtained a positive result for cocaine. Furthermore, a police drug dog later indicated by behavior that cocaine had been in the baggies. Latex gloves were also recovered at this location, and Thomas explained that drug dealers often use these to prevent cocaine from absorbing into their skin when handling it. Additionally, in a trash pull on November 19th prior to the execution of the search warrant, the police recovered around eight baggies with powder residue, which tested positive for cocaine; more documents/mail with the defendant's name on them (though not addressed to the Fifteenth Avenue address); a set of latex gloves; and a bottle of Inositol. Thomas related that dealers use Inositol as a "cutting agent" to mix with the cocaine, thereby creating greater quantity though less purity.

Based on this and other information garnered during the surveillance, Thomas obtained a search warrant for 1218 Fifteenth Avenue. Less than half an hour before the execution of the warrant, the defendant arrived at this address and entered the home. According to Sergeant James William McWright the defendant came back outside to retrieve a white plastic bag from a BMW parked there. As the defendant re-entered the home, McWright could not tell what the bag contained but could observe that it was not empty.

When the police subsequently entered the house to execute the search, Hutchinson stood in the vicinity of the front door and was detained on the front porch. At that time the defendant was in the area of the couch in the living room. According to Officer Ernest Edward Rigsby the defendant threw white powder at this time. This officer also stated that, when asked what he (the defendant) was trying to do with the cocaine at the time the officers entered, the defendant responded

---

[3] This individual lived at an Elm Hill Pike address.

-2-

that "he was trying to knock it off the table." Thomas later recounted that he too saw baggies and white powder fly across the room upon entering the home. Furthermore, the authorities found a black bag containing plastic baggies, rubber/latex gloves, and a small electronic scale likely within the defendant's reach. Another set of scales was located on the living room floor beside the coffee table near the defendant. Rigsby stated that these scales were the type used to weigh small amounts such as the quantities in which cocaine is sold. Approximately seven hundred dollars was also found at the scene. Moreover, in various visible places throughout the room, the police discovered additional bags of white powder. Some white powder was even found in the aforementioned white plastic bag, and an unaccounted for amount lay loose on the floor from being thrown. Officer Danny Eddings scooped a portion of this together for collection and bagged it for testing.

The authorities sent the white powder in baggies to the Tennessee Bureau of Investigation (TBI) to determine what the substance was. A forensic scientist from the TBI testified that the aggregate of the powder sent for testing constituted two hundred ninety-four grams of a substance containing cocaine.

Beyond this proof the State presented evidence concerning the financial records of the defendant and Anita Jackson, the girlfriend with whom he was living when arrested. An arguable discrepancy constituting tens of thousands of dollars existed between what these individuals allegedly earned and the money flowing through Anita Jackson's accounts.[4]

Further evidence pointed to a variety of cars owned and/or driven by the defendant during the surveillance period. Included among these were an older model Honda Prelude with body damage, an older model BMW, a relatively new Toyota 4Runner, and a 1997 or 1998 Mercedes Benz Kompressor. According to a statement that the defendant made to one of the officers who testified at trial, the defendant had paid for the Prelude but titled the car in Hutchinson's name. The State presented the title confirming that the vehicle was registered to Hutchinson. Additional documentation retrieved from the aforementioned BMW listed the defendant as the customer for repairs made to both the Prelude and to the BMW (though Hutchinson had been driving the BMW during the day of the arrest).

In presenting its case, the defense called Hutchinson to the stand. This witness testified that the defendant was an innocent man who had no part in the witness' criminal activity.[5] Hutchinson also attempted to account for the defendant's presence at the Fifteenth Avenue address on the day in question by relating it to the defendant's allegedly purchasing the Prelude from the witness. Furthermore, Hutchinson took the blame for throwing the cocaine in the air at the time of the arrest; offered an explanation for the defendant's involvement in repairs to the BMW; stated that the defendant had known nothing about the weapon hidden in the couch, etc. The defendant also called Anita Jackson who attempted to explain the excess cash flow above-referenced.

After hearing this and additional evidence, the jury convicted the defendant of the conspiracy and possession with intent to deliver counts as previously noted. Subsequently, the trial court sentenced the defendant to consecutive thirty-six and sixteen year terms respectively. In addition,

---

[4] Interestingly, while being booked, the defendant allegedly stated that he was unemployed.

[5] At the time of the trial, Hutchinson was already incarcerated as a result of pleading guilty to a cocaine offense arising from these events.

the trial court upheld both verdicts and sentences against challenges raised in the defendant's motion for a judgment of acquittal and motion for new trial;[6] thus, the defendant now brings this appeal.

## Validity of the Amended Possession Count

In his first issue the defendant asserts that the trial court erred in not granting him a judgment of acquittal on the amended possession count. He claims that the count prior to amendment was void and that since the trial court improperly permitted the amendment, a conviction based on this count may not stand. In what constitutes the seventh issue from the defendant's brief but will be combined for consideration here, the defendant also contends that "[c]ount 2 charging possession of over 26 grams of cocaine fatally varied with the conviction of possession of over 26 grams of c[o]caine with intent to sell." The State responds by asserting that the defendant waived this challenge to the indictment because he did not timely raise the matter; that the defendant did not suffer prejudice from the allowed amendment or any alleged variance; and that no variance existed between the amended count and the proof.

In order to guide our inquiry, we must begin with an overview of what transpired with this count of the indictment. The possession count on which the jury tried the defendant initially provided as follows:

> CLARENCE WILLIAM CARTER on the 19[th] day of November, 1998, in Davidson County, Tennessee and before the finding of this indictment, knowingly did possess 26 grams or more of a substance containing cocaine, a Schedule II controlled substance in violation of Tennessee Code Annotated §[]39-17-417, and against the peace and dignity of the State of Tennessee.

At the close of the proof but prior to argument, the trial court entered into a discussion with both parties concerning lesser-included offenses. After a break the defense returned and ultimately alleged that the possession count failed to charge any crime. The defense essentially explained that though this count cited Tennessee Code Annotated section 39-17-417, the remaining language of the count at best charged simple possession[7] because it did not allege that the defendant manufactured, delivered, sold, or possessed the cocaine in question with the intent to engage in any of these three

---

[6] Factual details from the sentencing, motion for judgment of acquittal, and new trial motion hearings will be provided in the discussion of related issues.

[7] This offense is defined in Tennessee Code Annotated section 39-17-418. See Tenn Code Ann. § 39-17-418.

activities as is required for a conviction under the aforementioned statute.[8] See Tenn. Code Ann. § 39-17-417. Since the statute cited allegedly did not coincide with the remaining language describing the offense, the defense reasoned that this rendered the count void. The defendant asserted that this was a jurisdictional matter and not an issue of notice, as the defense attorney candidly stated, "I'm not raising notice. I know what the case is about."

While ruling on the defendant's motion for dismissal, the trial court concluded that the count was not void. To support this conclusion, the court observed that the count cites the statute, the substance that the defendant is charged with possessing, the amount of substance involved, and the date on which the offense allegedly occurred. Though, as previously stated, the defendant did not allege that the count failed to place him on notice of the charge he faced, the court found that the language used was sufficient to satisfy the notice requirement. To underscore this, the trial court commented to the defense, "it's ironic that it's not until the Court inquires about lesser included offenses that you notice this. So, you obviously have not been prejudiced by this particular word, or words [sic], being left out of the indictment." Thereafter, the State moved to amend this count of the indictment to include the language "possess with intent to deliver." While the trial judge had mentioned that the State should likely "elect" among possession with intent to deliver, to sell, or to manufacture, the judge responded to this motion by announcing, "I'll grant the State's Motion to Amend Count Two, did possess with intent to deliver twenty-six grams or more." The trial court took this action over the defendant's objection.

We first address the question of waiver for failure to raise this matter pre-trial. The State correctly cites the relevant governing rule of criminal procedure. Nevertheless, we disagree with the State's conclusion based upon the application of this rule to the facts at hand. Tennessee Rule of Criminal Procedure 12(b) provides, in pertinent part:

> (b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion . . . . The following must be raised prior to trial: . . . (2) Defenses and objections based on defects in the indictment, presentment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Tenn. R. Crim. P. 12(b)(2) (emphasis added). Since the defendant has claimed that the count failed to charge an offense, his allegation did not need to be raised pre-trial; thus, this issue is not waived.

We, therefore, move to the question of whether the possession count charges an offense. Tennessee Code Annotated section 40-13-202, in pertinent part, provides that an

---

[8] Tennessee Code Annotated section 39-17-417(a) provides "It is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." See Tenn. Code Ann. § 39-17-417(a). The remainder of the statute basically addresses the applicable fines and classes of felonies for differing quantities of various controlled substances. See Tenn. Code Ann § 39-17-417.

indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

Tenn. Code Ann. § 40-13-202. Beyond this the Tennessee Supreme Court in State v. Hill noted that "the purpose for the traditionally strict pleading requirement was the existence of common law offenses whose elements were not easily ascertained by reference to a statute. Such common law offenses no longer exist." State v. Hill, 954 S.W.2d 725, 728 (Tenn. 1997). Our supreme court quoted this language in a subsequently decided case adding that "[w]ere we to hold otherwise, we would be embracing technicalities that are empty and without reason." Crittenden v. State, 978 S.W.2d 929, 931 (Tenn. 1998); see also, State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000) (quoting Crittenden, 978 S.W.2d at 931). Furthermore, the supreme court has observed

> that an indictment is sufficient to satisfy the constitutional guarantees of notice to the accused if the indictment contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense.

Hammonds, 30 S.W.3d at 299; see also Hill, 954 S.W.2d at 727.

In keeping with this line of cases, we find that the charge meets the minimum requirements for a valid indictment. The instant case is not one in which the count of the indictment stated "mere results or conclusions." See State v. Clark, 2 S.W.3d 233, 237 (Tenn. Crim. App. 1998). In addition to the date, name of the defendant, and statute violated, the count detailed the substance involved and the amount possessed. This information permitted the defendant to determine the class of felony allegedly committed under the cited statute.[9] See Tenn. Code Ann. § 39-17-417(b)-(j). Moreover, the prosecution's use of the word "possess" limited the manner in which the State alleged the crime to have occurred to that described in Tennessee Code Annotated section 39-17-417(a)(4). Granted, within this subsection are three alternative theories by which the defendant could have committed the offense (i.e. by possessing the substance with the "intent to manufacture, deliver, or sell"). See Id. However, in Wyatt v. State, 24 S.W.3d 319 (Tenn. 2000), our supreme court upheld the validity of an indictment involving attempt which cited the relevant statute (Tennessee Code Annotated section 39-12-101) but made "no reference to the attempt statute's numbered subsections nor [did]

---

[9] Since the allegation referenced twenty-six grams or more of cocaine, the crime as charged constituted a B felony. See Tenn. Code Ann. § 39-17-417(i)(5).

it specify a specific act or course of conduct constituting the 'attempt to kill.'"[10] Wyatt, 24 S.W.3d at 324-25.

In sum, the aforementioned requirements cited in Hill and its progeny have been met in this case. By the admission of the defense, the contested count of the indictment succeeded in placing the defendant on notice of the charge he faced. Furthermore, the detail provided in the count afforded the court an adequate basis to enter a proper judgment and protects the defendant against double jeopardy. See, e.g., Hill, 954 S.W.2d at 727. The defendant's issues related to the facial validity of the possession count are, therefore, without merit.[11]

We next briefly dispense with the matter of the trial court's granting the State's motion to amend this count of the indictment. Tennessee Rule of Criminal Procedure 7(b) states that "[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches." See Tenn. R. Crim. P. 7(b). After jeopardy attaches the clear language of Rule 7(b) prohibits any amendments to the indictment. In a jury trial jeopardy attaches when the jury is sworn. Ahern v. Ahern, 15 S.W.3d 73, 80 (Tenn. 2000). As above-noted, the trial court in the instant case allowed the prosecution to amend this count of the defendant's indictment after the close of the proof and over the defendant's objection. Such constituted error. However, since the indictment was sufficient prior to amendment, no new or different offense was charged, and the defense admitted it had sufficient notice of what the case was about, the error was harmless. See Tenn. R. Crim. P. 52(a).

Furthermore, we find no "fatal variance." Such claims involve a variation between the indictment and the proof presented at trial. See, e.g., State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993). These issues only merit relief when the discrepancy is material and affects a defendant's substantial rights. See, e.g., id. at 640-41. Our supreme court has provided that no situation of this type exists if "(1) the indictment otherwise sufficiently informs the defendant of the charge against him such that he will not be misled and can adequately plan a defense and (2) the variance is such

---

[10] The indictment in Wyatt stated that the defendant "on the 7th day of March, 1994, in Cumberland County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, deliberately and with premeditation attempt to kill Billie Carey in violation of T.C.A. 39-12-101 . . . ." Wyatt, 24 S.W.3d at 324. Under this statute, a person commits the offense of criminal attempt if,

> acting with the kind of culpability otherwise required for the offense[, the person]: (1) Intentionally engages in an action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be; (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3).

[11] Because of the lack of detail, the Wyatt Court encouraged the State to provide more information in future cases of this nature and noted that a defendant in this situation may obtain more information by moving for a bill of particulars. Wyatt, 24 S.W.3d at 325. We find both of these suggestions applicable to the instant case.

that the defendant cannot be prosecuted again for the same offense due to double jeopardy principles." Id. at 461.

From the defendant's brief argument, it is unclear whether he actually alleges a variation between the indictment and the proof. In many respects his allegation seems to rehash the above-disposed of assertions. As aforementioned, the defendant stated this issue in the following manner: "Count 2 charging possession of over 26 grams of cocaine fatally varied with the conviction of possession of over 26 grams of c[o]caine with intent to sell." In making his argument, the defendant also refers to notice and double jeopardy. Furthermore, he avers that "the indictment charges an offense different from the offense [for which the defendant was] convicted."

Our previous analysis led us to conclude that the unamended version of the indictment charged the defendant with violating Tennessee Code Annotated section 39-17-417(a)(4). The defendant stands convicted of this offense.[12] As will be addressed below, we find that the proof supports this conviction. Furthermore, we see no variance between the unamended possession count and the evidence. The same is true of the amended possession count and the evidence. We, therefore, find no variance exists. Moreover, even if a variance were involved, we have already determined that the defendant did not suffer from a failure of notice and is not in danger of facing double jeopardy regarding this offense. Thus, any discrepancy would not have been fatal. In view of these findings, we conclude that this contention also merits no relief.


## Validity of the Conspiracy Count


The defendant also contends that the conspiracy count did not "allege an overt act in pursuit of the conspiracy"; thus, the count is void. Within his argument the defendant further avers that "[t]here is no allegation that Mr. Hutchinson and [the defendant] entered into an agreement that one or more of them would engage in conduct which constitutes the offense as required by T.C.A. §39-12-103(a) and (d)." Additionally, the defendant alleges that the prosecution erred by citing in this count Tennessee Code Annotated section 39-17-417(j) instead of Tennessee Code Annotated section 39-12-103. In response the State asserts that the defendant waived the matter by failing to timely challenge the alleged defect and that the language of the indictment is sufficient.

Again we begin with a brief overview of the facts surrounding the conspiracy count of the indictment in this case. This count provided that the defendant

> on divers days between the ___ day of March, 1998, and the ___ day of November, 1998, in Davidson County, Tennessee and before the finding of this indictment, did knowingly agree with Reginald Hutchi[n]son and with others, known and unknown to the Grand Jury, that one or more of them would engage in conduct that constitutes the offense of the sale of 300 grams or more of a substance containing cocaine, with each having the culpable mental state required for the commission of that offense, and with each acting for the purpose of promoting or facilitating the commission of

---

[12] The improperly amended count alleged a violation of this same section of our code.

the offense, and in furtherance of the conspiracy did engage in one or more of the following overt acts:

1. Reginald Hutchi[n]son maintained a house at 1218 15th Avenue South with the purpose of storing, repackaging, and safekeeping cocaine;

2. The Defendant Clarence William Carter did possess, on November 19, 1998, over 26 grams of cocaine;

Wherefore, Clarence William Carter did conspire to violate Tennessee Code Annotated §[]39-17-417(j) in violation of Tennessee Code Annotated §[]39-17-417, and the defendant acted against the peace and dignity of the State of Tennessee.

The defense first raised an objection to the language of this count in its amended new trial motion.

At the outset we note that the State's claim of waiver fails once more. Like the defendant's challenge to the possession count of his indictment, the allegation raised through this issue is that the trial court lacked jurisdiction to consider the conspiracy count because the count did not allege an overt act and, thus, did not state a criminal offense. Precedent leads us to concur with the defendant that "[a] conspiracy indictment must allege an overt act in furtherance of the conspiracy charged." State v. Kelani Melia Mayer, No. W1999-00613-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 363, at *6 (Tenn. Crim. App. at Jackson, May 8, 2000); see also State v. Mencer, 798 S.W.2d 543, 546 (Tenn. Crim. App. 1990); State v. Thorpe, 614 S.W.2d 60, 65 (Tenn. Crim. App. 1980). Therefore, this type of claim may be raised at any time and has not been waived. See Tenn. R. Crim. P. 12(b)(2).

However, contrary to the defendant's allegation, the State specifically set out two overt acts allegedly committed in furtherance of the conspiracy as required by Tennessee Code Annotated section 39-12-103(d).[13] These overt acts are enumerated as such within the indictment. It appears as though the defendant's argument revolves around the fact that the overt acts do not describe joint activities of the defendant and his co-conspirator. However, such is not needed. Caselaw allows a conviction to be sustained arising from an indictment wherein only one overt act undertaken by one conspirator is alleged. See DeWees v. State, 390 S.W.2d 241, 242-44 (Tenn. 1965). Moreover, the conspiracy statute itself provides that the requisite overt act may be done by the applicable defendant "or by another with whom the person conspired." See Tenn. Code Ann. § 39-12-103(d). This portion of the defendant's claim lacks merit since, as referenced, the conspiracy count in the instant case alleges not merely one but two manifestations of the intent to commit the offense asserted to be the object of the conspiracy.

Briefly turning to the statute defining the crime of conspiracy, we find that, to support such a conviction, Tennessee Code Annotated section 39-12-103(a) requires the State to prove that

two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting

---

[13] This subsection states that "[n]o person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d).

or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a). Though the defendant correctly notes that the State did not cite this section of the code within the conspiracy count, a comparison of this count with the statute makes it evident that the State did essentially track the language used therein. We further find that, again contrary to the defendant's assertion, this count did include an allegation that the defendant and "Hutchi[n]son" knowingly agreed "that one or more of them would engage in conduct that constitutes the offense of <u>the sale of 300 grams or more of a substance containing cocaine</u>."

In conclusion, we review the requirements outlined above as set out in Tennessee Code Annotated section 40-13-202 and in <u>State v. Hill</u> and its progeny. While the safer practice may have been for the prosecution to also cite the conspiracy statute, this defendant was placed on notice of the crime with which he was charged and the count provided sufficient grounds to enable the trial court to enter a proper judgment against him.[14] Moreover, the language used did not subject the defendant to a risk of double jeopardy. For the foregoing reasons we determine that the conspiracy count is valid and that this issue lacks merit. <u>See</u>, <u>e.g.</u>, Tenn. Code Ann. § 40-13-202; <u>Hammonds</u>, 30 S.W.3d at 299; <u>Hill</u>, 954 S.W.2d at 727.


## Sufficiency


The defendant next contends that the proof is insufficient to sustain both of his convictions. With respect to his conspiracy conviction, the defendant particularly asserts that the proof is insufficient because the State failed 1) to allege and prove an overt act; 2) to prove the existence of an agreement between the defendant and Hutchinson; 3) to prove that the defendant committed any criminal acts; and 4) to prove the requisite quantity of cocaine for the convicted offense. Regarding his possession conviction, the defendant avers that the proof points to Hutchinson's possession of the narcotics but not to the defendant's.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. <u>Id.</u> The relevant question the reviewing court must answer is whether any rational trier of fact could

---

[14] The State's inclusion of Tennessee Code Annotated § 39-17-417(j) served as an aid to the defendant in clarifying the appropriate class of felony of which he would be convicted if the jury found him guilty as charged.

have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Id. at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," a criminal offense may be established exclusively by circumstantial evidence. State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

First addressing the conspiracy count, we again note that to sustain this type of conviction, Tennessee Code Annotated section 39-12-103(a) requires the State to prove that

> two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a). The remaining pertinent portion of this section provides that "[n]o person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d). In the instant case the offense alleged to have been the object of the conspiracy was "the sale of 300 grams or more of a substance containing cocaine . . . in violation of Tennessee Code Annotated §[]39-17-417."

With this background we analyze the evidence presented. The sharing of vehicles and financial responsibility therefor between these two individuals suggest involvement in each other's affairs. In addition, the trash pulls referenced earlier revealed mail belonging to the defendant and to Hutchinson intermingled in each other's garbage. These pulls also led to the discovery of an empty box of baggies, the likes of which are commonly used to package cocaine for distribution; latex gloves, often utilized by cocaine dealers to prevent product from being absorbed into their skin while packaging; Inositol, a cutting agent added to cocaine to increase the total amount of product available for sale; and, in some of the otherwise empty bags, cocaine residue. Beyond this, the police discovered the defendant essentially surrounded by evidence of drug dealing upon executing a search warrant at Hutchinson's residence. Baggies of cocaine were in plain sight throughout the room; electric scales, again commonly used for measuring street-quantity sales of cocaine, were discovered near the defendant; a box of rubber gloves and hundreds of dollars were also located in his vicinity; etc. Moreover, two officers testified that, upon entering, they saw loose cocaine flying through the air coming from the defendant's direction. In fact, one officer stated that he had seen the defendant throw the bag of cocaine. According to yet another officer the defendant stated, while being booked, that he had been trying to knock cocaine off of the table when the officers came into the home. As previously noted, testing revealed that two hundred ninety-four grams of cocaine had been seized at the scene. Officer Danny Eddings' testimony indicated that "quite a bit" of the cocaine spilled on

the carpet had not been recovered. The period of time involved in the indictment would have also included the residue above-referenced, cocaine involved in one or two sales Hutchinson acknowledged making earlier on the day of the arrest, etc.

Within an earlier issue we addressed the defendant's contention that the State did not allege an overt act. Both maintaining a structure for "storing, repackaging, and safekeeping cocaine" and possessing more than twenty-six grams of cocaine constitute actions committed in furtherance of the alleged conspiracy. We now find that the record reflects sufficient proof supporting not only one, but both of these allegations.

Additionally, our courts have long-held that

> To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise.

Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978); see also, e.g., State v. Pike, 978 S.W.2d 904, 915-16 (Tenn. 1998). The jury could reasonably infer from the facts above-provided the existence of an agreement between Hutchinson and the defendant to sell cocaine.

We also remain unpersuaded by the defendant's claim that the State failed to prove criminal activity on the defendant's part. In making this argument, the defense focuses on Officer Taylor's responses to questions asked of him during cross-examination and on potentially exculpatory testimony provided by Hutchinson. When questioned at trial by the defense, Taylor essentially affirmed on two occasions that he "had observed no criminal activity during" the surveillance period prior to the search. Later during the defendant's case-in-chief, Hutchinson testified that the defendant had no involvement with the cocaine and was "an innocent man." While proof of this nature afforded the defendant information to potentially sway the jury in his favor, the fact remains that the jury rejected such proof and found him guilty. Our review reveals many aspects of Hutchinson's testimony calling into question this witness' credibility. Among these were his manner of responding to various questions asked on cross-examination and his prior drug offenses from 1989 or1990; 1991; and the related 1998 conviction arising from this series of events. In addition, other portions of Officer Taylor's and additional officers' testimonies referenced above supply evidence that supports each element of the conspiracy charged beyond a reasonable doubt.

Finally, we look to the defendant's assertion regarding the amount of cocaine that the State alleges he conspired to sell. It is true that the total amount of substance tested by the forensic scientist from the Tennessee Bureau of Investigation was two hundred ninety-four grams. However, as noted in the above recitation of the facts, the record also contains testimony regarding one or two cocaine sales made by Hutchinson on the morning of the arrest, cocaine residue found in the trash pulls, "quite a bit" of loose cocaine left on the floor resulting from the tossing of a bag of this substance as the search began, etc. From this type of proof, the jury could reasonably infer that the defendant and Hutchinson had conspired to sell three hundred grams or more of cocaine during the months covered by the first count of the indictment on which the defendant was tried.

Viewing the evidence in the light most favorable to and resolving all conflicts in the favor of the State, we find sufficient proof to support each of the elements above-provided. As none of the defendant's arguments have persuaded us otherwise, we find that this issue merits no relief.

We therefore next consider whether the evidence is sufficient to support the defendant's conviction of possession of twenty-six grams or more of cocaine. Apparently the defendant seeks to argue that he had no involvement with the cocaine seized as a result of the search in this case. To this end he uses the following language in framing this issue: "the drugs were found in Hutchin[son]'s house and Hutchinson had been selling cocaine before [the defendant's] arrival." Furthermore, within the body of the defendant's argument, the defendant makes reference to Hutchinson's testimony proclaiming the defendant "an innocent man" who "didn't have nothing [sic] to do with nothing [sic]."

Turning once more to the relevant portions of Tennessee Code Annotated section 39-17-417, in order to sustain this conviction, the prosecution needed to prove that the defendant "knowingly . . . [p]ossess[ed] a controlled substance with intent to . . . deliver . . . [t]wenty-six (26) grams or more of any substance containing cocaine." Tenn. Code Ann. § 39-17-417(a)(4), (i)(5). Applying this standard to the facts at hand, we find that the record supports the jury's verdict. For example, when the police entered Hutchinson's residence, the defendant was almost literally surrounded by items involved in the drug trade: numerous bags of cocaine, money, scales, etc. Furthermore, the defendant was apparently in the process of attempting to hide some of the cocaine as the officers entered to conduct the search. While this Court has held "that mere presence at a location where drugs are sold or mere association with those selling drugs is not sufficient to establish criminal liability," the Court added that each case is fact specific. State v. Bigsby, 40 S.W.3d 87, 91 (Tenn. Crim. App. 2000). Thus, based on the facts presented viewed in the light most favorable to the prosecution and resolving all conflicts in favor of the State, we find the evidence sufficient to support the possession conviction also.

### Lesser-Included Offense Instruction

Through his next issue the defendant contends that the trial court erred by not instructing the jury regarding conspiracy to sell or deliver less than three hundred grams of cocaine.[15] The analysis of this matter typically involves a multi-step process as set out by the Tennessee Supreme Court in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), and its progeny. However, we need not delve into this analysis here. Though neither the defense nor the State cite this Court to the appropriate portion of the record, a review of the trial transcript demonstrates that the trial court did, in fact, instruct the jury concerning "the lesser included offense of [c]onspiracy to [s]ell twenty-six (26) grams or more

---

[15] This trial was conducted before Tennessee Code Annotated section 40-18-110 dealing with the charging of lesser-included offenses went into effect; thus, it has no impact on this appeal. See Tenn. Code Ann. § 40-18-110 (notation after statute referring to amendment).

of a substance containing [c]ocaine, a Schedule II controlled substance."[16] The jury found the defendant guilty of the greater offense.[17] This issue has no merit.

## Sentencing

Finally, the defendant asserts that the trial court erred in sentencing him. More specifically, the defendant alleged that he should not have been sentenced as a multiple offender because the State failed to give appropriate notice and because the proof insufficiently established that the supporting convictions were his. Furthermore, the defendant contends that the trial court inappropriately imposed consecutive sentences in his case, resulting in his being ordered to serve an excessive number of years.

### A. Standard of Review

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, the sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears the burden of demonstrating that the sentence is improper. Ashby, 823 S.W.2d at 169.

### B. Notice of Enhanced Sentencing Range

In analyzing the State's alleged failure to properly notify the defendant of its intent to seek to have him sentenced as a multiple offender, we turn first to Tennessee Code Annotated section 40-35-202. This statute, in pertinent part, states:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days

---

[16] A conspiracy of this type involving three hundred "grams or more of any substance containing cocaine" is a Class A felony. See Tenn. Code Ann. § 39-17-417(j)(5). The quantity of substance containing cocaine involved for a B felony conviction is twenty-six grams or more. See Tenn. Code Ann. § 39-17-417(i)(5).

[17] The jury did ask, "If we find [the defendant] guilty of three hundred grams or more and there was not . . . [referencing the scientific proof of two hundred ninety-four grams], could it later be grounds for appeal?" The trial court responded, "Any issues or matters to be considered by you have been previously submitted to you in the Court's previous instructions." The court's instructions included both the charged and the immediate lesser-included offense as above-noted.

before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. Such statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Tenn. Code Ann. § 40-35-202(a). Furthermore, Tennessee Rule of Criminal Procedure 12.3(a) provides:

Written statements of the district attorney giving notice that the defendant should be sentenced to an enhanced punishment, for an especially aggravated offense, and/or as a persistent offender shall be filed not less than ten (10) days prior to trial. If the notice is filed later than this time, the trial judge shall grant the defendant, upon motion, a reasonable continuance of the trial.

Tenn. R. Crim. P. 12.3(a).

Considering the facts of this case, we find that the question is not one of late-filed notice, but rather whether notice was ever filed with regard to the indictment on which the defendant was tried. The technical record reveals that almost a year before the trial, the State filed notice of enhanced punishment "pursuant to Tennessee Code Annotated §[]40-35-202." However, the State filed the notice on case number 99-A-689, the original indictment under which the defendant was charged. This indictment was limited to two counts charging the defendant with possession "with intent to deliver 300 grams or more of a substance containing cocaine" and with carrying "a firearm, in violation of Tennessee Code Annotated §[]39-17-1307." Apparently, after learning, for example, that the total weight of substance recovered measured only two hundred ninety-four grams, the State returned to the grand jury and obtained an indictment lowering the amount possessed to twenty-six grams or more.[18] This indictment also included the weapons offense essentially as phrased in the original indictment[19] and the additional charges regarding conspiracy and money laundering. The case number recorded for his indictment was 99-C-1975. There is no allegation that the State filed a notice of enhancement under this case number nor does the record reveal such.

At the time of sentencing, the State began introducing convictions to support sentencing the defendant as a multiple offender, and the defense alleged that the State had failed to timely give notice that it would be seeking this. In response, the prosecution claimed that 99-C-1975 constituted a superseding indictment. The defense disputed the validity of applying this terminology to the facts

---

[18] As noted in the first issue addressed in this opinion, the State omitted the "intent to deliver" phrase. However, we have already found that this intent was encompassed by the language utilized in the second indictment.

[19] Though the defense claims that one of the weapons offenses charges carrying a weapon in the commission of a felony and one charges merely carrying a weapon, a word by word comparison of the two counts reveal that they are identical other than the fact that one includes the defendant's middle name while the other uses his middle initial.

at hand. The trial court noted that a motion to suppress arising from this case had been heard only under case number 99-A-689; that both case numbers had been set on February 7, 2000, in the same court; and that on that date the State had moved to dismiss 99-A-689 and the court had assigned 99-C-1975 a March of 2000 trial date.

After making these observations, the trial court heard additional argument and announced its findings. Within these the court stated that 99-C-1975 superseded 99-A-689 and that the notice given under 99-A-689 sufficed for sentencing on convictions arising out of 99-C-1975. The court further made reference to the fact that the conduct tried arose out of events "allegedly occurring in November of [1998], stemming from this search warrant that we had full and lengthy hearings on under" 99-A-689. Moreover, the court offered its opinion that the defense attorney, the State, and the defendant were aware that the defendant "had been given notice as [to the defendant's potential multiple] offender [status] on the indictments that stem from the trial."

A somewhat analogous situation is presented in State v. Chase, 873 S.W.2d 7 (Tenn. Crim. App. 1993). Therein, the prosecution originally indicted Chase for theft and later filed a notice of enhancement. See id. at 8-9. The State subsequently sought a second indictment charging Chase with alternative counts of theft arising from the same taking of property; however, the State did not file another notice of enhancement. Id. at 9. The Chase Court found:

> The record shows that the second indictment was a reindictment for the same offense as charged in the first indictment. Both indictments applied to the same victim, the same vehicle, the same date and time, the same defendant and the same crime. Thus, the notice filed in the first indictment gave the defendant fair warning that the State intended to seek an enhanced punishment for that crime. Since the defendant was well aware of the existence of both indictments and since both indictments charged the same crime, there was no reason to believe enhanced sentencing would not apply to a conviction under either indictment. The purposes of the act as set out in [State v.] Adams[, 788 S.W.2d 557, 559 (Tenn. 1990)] were accomplished. The defendant was in no way misled or surprised. From the facts it is evident that the intent of T.C.A. § 40-35-202 was fulfilled.

Chase, 873 S.W.2d at 9. The referenced intent of such notice is "to order plea-bargaining, to inform decisions concerning pleadings and to aid in trial strategy." Id.; see also Adams, 788 S.W.2d at 559.

More recently, this Court decided State v. Jerome Sawyer, No. W2001-01923-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 750, at *1 (Tenn. Crim. App. at Jackson, Aug. 27, 2002). In Sawyer, the State sought a second indictment for aggravated sexual battery extending the time frame during which the same offense alleged in the first indictment could have occurred. Id. at *1, *10, *13. This time frame encompassed the date alleged in the original indictment. Id. at *13. Again the prosecution did not file a notice of enhancement on the new indictment as it had on the prior one. Id. at *11. Nevertheless, this Court held that the first notice was sufficient to cover the subsequent indictment though the time period was extended in the second. Id. at *13-*14. In so finding, the Court stated:

> Even though the second indictment may have merely been a contrivance to allow [the victim] to testify about three additional incidents when the defendant had sexual

-16-

contact with her, both indictments alleged a time frame that encompassed October 22, 1999, and the state apparently maintained throughout the proceedings that it would elect the October 22, 1999 event as the basis for securing a conviction on the single-count indictment. We point out that, even though the second indictment may have broadened the state's field of choices from which to elect a punishable crime, only one offense was alleged in each indictment. In this situation, we hold that Chase compels the result that the defendant received notice through the notice filed in [the first] case.

Id.

With this background we turn once again to the instant appeal. Unquestionably, the above-cited cases are not entirely analogous to the situation presented here. The second set of charges in this matter includes two new offenses (conspiracy and money laundering). However, the subsequent charging instrument does set out one offense that is the same in both indictments (illegal possession of a weapon) and another count that is a lesser-included offense of a crime charged in the original indictment (possession of 26 grams or more of a substance containing cocaine). Furthermore, the charges in both indictments essentially arose out of the same series of events involving cocaine and/or searches carried out on November 19, 1998. Moreover, the date of offense involved in the weapons and possession counts is the same in both indictments. Similarly to Sawyer, even the extended time frame for the conspiracy charge encompasses the November 19, 1998 date involved in both counts of the original indictment.[20] Potentially most importantly, we note the trial court's conclusion that the defendant and his counsel were, in fact, on notice of the potential range enhancement faced by the defendant. According to the record the defense attorney admitted that he had been aware of the notice filed under the first indictment. Furthermore, in discussing this matter, the defense attorney stated that on the day of trial, he had been "under the impression that no notice had been filed on [the] conspiracy [and money laundering] count[s]." He added, "Whether or not the original indictment, so far as it charged the same things as the second indictment, I wasn't real sure where I would stand on that with the Court." Counsel continued by acknowledging that it was arguable that the State had sufficiently given notice of its intent to enhance with respect to the original two charges made a part of the second indictment but stated that he did not concede that.

Under these circumstances we agree with the trial court's conclusion. The notice was sufficient "to order plea-bargaining, to inform decisions concerning pleadings and to aid in trial strategy." See Chase, 873 S.W.2d at 9. Such notice, thus, supports the imposition of Range II

---

[20] The offense date given in the money laundering count does not coincide with this consideration as that date is October 25, 1998. However, the jury did not convict the defendant of this count or of the weapons count; thus, no improper sentence allegation may be raised concerning them.

-17-

sentences as a multiple offender for both of the defendant's convictions.[21] This allegation, therefore, lacks merit.

### C. Adequacy of Proof Connecting the Defendant to the Prior Convictions

We next consider the defendant's claim that the State did not sufficiently prove that the prior convictions supporting the enhancement of the defendant's range were the defendant's convictions. In support of this allegation, the defendant asserts that the social security numbers set out in the Williamson County and the Davidson County judgment forms do not match. The defendant also avers that the State offered no proof of his social security number.

To classify the defendant as a multiple offender and sentence him within Range II, the trial court, in this instance, needed to find beyond a reasonable doubt that the defendant had at least two "prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-106(a)(1), (c). The defendant does not contest that, if proven to be his, the convictions put forth by the State would fulfill this requirement, and our review of the record reflects the existence of the appropriate number and class of offenses.

We, thus, exclusively consider the matter of whether the proof sufficiently supports the court's finding that the prior convictions are of the defendant, and we return to Tennessee Code Annotated section 40-35-202(a) for guidance. In addition to the aforementioned provisions, this subsection further states that

> [t]he original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein.

Tenn. Code Ann. § 40-35-202(a). As noted in the trial court's findings and acknowledged by the defense, the certified copies submitted by the State both bore the defendant's name. Beyond that, the Williamson County judgments had the same social security number as that listed as the defendant's on, among other documents, his 1993-1995 income tax returns. In addition, the date of birth, sex, and race listed on the Williamson County judgments matched those on the Davidson County judgment. Furthermore, though no docket numbers for the Williamson County convictions are listed on the Davidson County judgment, the latter document makes three references to a Williamson County sentence, two of these references specifically mentioning the ninety days ordered to be served on the Williamson County convictions. Based upon this evidence, we find no reason to disturb the trial court's conclusion that the individual to whom all of these convictions belong is the defendant in this case. We, therefore, find this issue to lack merit.

---

[21] We emphasize that this finding is reliant upon the facts presented by this case and stress that in these situations a prosecutor acts at his or her own peril in not filing notice under a subsequently obtained indictment. Though we find that the facts of this case weigh in the State's favor, a slightly different factual scenario may well bring a different result.

D. Consecutive Sentencing

Finally, the defendant avers that his fifty-two year sentence is excessive. In contesting this total, the defendant asserts that his case does not warrant consecutive sentencing. The defendant further claims that an alleged statement of the defendant's recounted by an officer "unduly prejudiced the [t]rial [c]ourt." At the outset we note that the defendant makes no reference to the length of the individual sentences imposed here, nor does he mention any alleged errors committed by the trial court concerning enhancing or mitigating factors. We, therefore, focus our analysis on the fact that the trial court ordered the sentences to be served consecutively.

In Tennessee Code Annotated section 40-35-115 our legislature set out the statutory considerations under which a trial court may rightfully impose consecutive sentences. See Tenn. Code Ann. § 40-35-115(b). Among these are findings by a preponderance of the evidence that "[t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood" and that "[t]he defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(1), (6). The trial court found both of these applicable in the defendant's case.

The record amply supports a finding that the defendant made his living as a professional criminal. Moreover, according to the aforementioned certified judgments from Williamson County, the defendant was sentenced on January 10, 1994, to serve six years on supervised probation for a class C conviction of conspiracy to sell cocaine and a concurrent eight years on supervised probation for a class B conviction of the sale of cocaine.[22] Also, the Davidson County judgment provides that on January 13, 1994, the defendant received another eight-year sentence to be served on probation subject to a list of conditions. This sentence was ordered to be served concurrently with the Williamson County sentence. After being afforded these opportunities to cease his involvement with dealing cocaine, the defendant committed the offenses in this case during 1998, well within his eight-year probationary period.[23] This provides an additional justification for consecutive sentencing. This issue is without merit.

## Conclusion

For the foregoing reasons we find that the defendant's issues do not merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE

---

[22] As alluded to above, both judgments also include as a "Special Condition" the service of "ninety days, day for day."

[23] In its findings at the sentencing hearing, the trial court mentions that the defendant's probation was apparently revoked on April 16, 1999.